UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY TAYLOR                          JURY TRIAL DEMANDED

v.

ACTION MANUFACURING COMPANY,
INC. and ARTHUR MATTIA

## COMPLAINT

This case involves the willful and reckless violation of the laws and public policies of the United States and the Commonweath of Pennsylvania by defendants, Action Manufacturing Company, Inc. ("AMC") and its principal, Arthur J. Mattia, and their firing of plaintiff, Anthony Taylor, for opposing and reporting to federal investigators defendants' unlawful and dangerous storage, manufacture and transportation of explosive material, among other violations.

Specifically, Taylor asserts the following against the defendants, AMC and Mattia:

## PARTIES

1.    Plaintiff Anthony Taylor is an adult individual residing at 89 Glendale Road, Exton, Pennsylvania 19341.

2.    Defendant AMC is a Pennsylvania Corporation located at190 Rittenhouse Circle, Bristol, Pennsylvania 19007.

3.    Defendant Arthur J. Mattia is an adult individual, and is the President and Chief Executive Officer of Action Manufacturing Company.   Upon information and belief, Arthur J. Mattia resides at 2366 Steven Road, Huntingdon Valley, Pennsylvania 19006.  Mattia was AMC's decision-maker in all wrongful conduct set forth below.

1

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over the present action pursuant to 28 U.S.C. § 1331 and 49 U.S.C. § 31105(c), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

5.    Venue in the United States District Court for the Eastern District of Pennsylvania is proper pursuant to 28 U.S.C. § 1391(b) because (1) Defendants reside in the judicial district of the Eastern District of Pennsylvania, and (2) a substantial part of the events or omissions giving rise to the claim occurred in the judicial district of the Eastern District of Pennsylvania.

## STATEMENT OF THE CASE

6.    As is described more fully below, Defendants unlawfully terminated Taylor's employment on December 20, 2012, in retaliation for Taylor's cooperation with a joint investigation by the United States Department of Transportation ("DOT") and the United States Environmental Protection Agency ("EPA") regarding AMC's unlawful transportation of dangerous explosives on public roads, the company's hazardous waste management practices, and other health and safety hazard regulatory violations.

7.    Taylor's termination by Defendants violated the Surface Transportation Assistance Act ("STAA"), 49 U.S.C. § 31105(a) (*see also* 29 C.F.R. § 1978.102(c)(3)), as well as a clear mandate of Pennsylvania public policy.

## FACTS

### Procedural History

8.    On March 5, 2013, Taylor filed a Complaint with the United States Department of Labor's Occupational Safety and Health Administration ("OSHA"), pursuant to 49 U.S.C. § 31105(b).

9.    By way of letter dated May 2, 2013, OSHA acknowledged receipt of Taylor's Complaint and confirmed that his Complaint was filed on March 5, 2013.

10.    Pursuant to 49 U.S.C. § 31105(c), "if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy."

11.    More than 210 days have elapsed since Taylor filed his Complaint with OSHA, and no decision, final or otherwise, has been issued.

12.    The delay is not due to any bad faith on the part of Taylor.

13.    Taylor has satisfied all administrative prerequisites for the bringing of this action.

### Taylor's History of Employment

14.    Taylor has a Bachelor of Arts in Biology from East Stroudsburg State University.

15.    Taylor is a veteran of the United States Air Force, having served as a Bio-Environmental Engineering Technician, in addition to serving as an officer in the Air National Guard for four years and, upon his separation under honorable terms, he acquired the rank of Captain.

16.    Taylor worked as a civil servant for the Pennsylvania Department of Environmental Protection for five years, where he served as a Solid Waste Specialist.

17.    In October of 2000, AMC hired Taylor to serve as its Environmental Compliance Manager.

18.    In his role as Environmental Compliance Manager for AMC, Taylor was responsible for managing AMC's environmental health, safety and security programs, conducting environmental monitoring and training, performing safety and environmental audits, and chairing AMC's safety committee.

19.    AMC manufactures various ordnance products, including grenades, detonators, leads, squibs, fuzes and other explosive and timing devices.

20.    In conjunction with the manufacture of the products described in the preceding paragraph, AMC supplies, imports and distributes chemicals for sale, distribution and use within the Commonwealth.

21.    The chemicals used by AMC are hazardous substances which are regulated by OSHA, DOT, EPA, the Bureau of Alcohol, Tobacco, Firearms and Explosives, and the Department of Defense.

22.    AMC's manufacturing business affects commerce, and AMC owns or leases commercial motor vehicles in connection with its business, and assigns employees to operate the vehicle in commerce.

23.    AMC has facilities in Bristol, Pennsylvania, and Atglen, Pennsylvania, ("the Atglen facility"), and formerly had a plant in Northeast Philadelphia.

24.    Taylor worked at the AMC facilities in Atglen at 500 Bailey Crossroads Road, in Northeast Philadelphia at 100 East Erie Avenue, and in Bristol at 190 Rittenhouse Circle.

25.    In his role as Environmental Compliance Manager for AMC, Taylor directly affected commercial motor vehicle safety by, among other activities, training employees, auditing safety systems and procedures, and communicating with the Pennsylvania Department of Transportation and the DOT about AMC trucks.

26.    Taylor served as AMC's Environmental Compliance Manager for twelve years before his termination on December 20, 2012.

## AMC's Hazardous Waste Management Practices

27.    During his employment with AMC, Taylor became aware of, and notified AMC

and Mattia of, numerous significant environmental safety and compliance issues, including, but

not limited to:

    a)    The shipment of explosive materials that had not been examined,

classified or approved by the DOT under 49 C.F.R. Part 173, Subpart C, and in

packaging that had not been prepared or tested as required by 49 C.F.R. Part 178,

Subpart M, as incorporated by reference pursuant to 67 Pa. Code § 403.4, on

public roads between AMC's Philadelphia and Atglen facilities.

    b)    The manufacture and processing of explosives at the Atglen plant without

proper ventilation, causing employees to be exposed to toxic solvent fumes with

chemical concentrations in excess of the limits established by OSHA at 29 C.F.R.

§ 1910.1052; and

    c)    The storage of explosive materials at the Atglen plant in heated ovens and

elsewhere that failed to meet various federal and state standards regarding the

location, security, construction and maximum capacity of storage units, including

27 C.F.R. §§ 555.206 and 555.213, and 25 Pa. Code § 211.115 (incorporating 27

C.F.R. Part 555, Subpart K).

28.    These violations and hazardous conditions endangered the health and safety of

AMC employees and the general public, and caused at least two reported incidents resulting in

injury to AMC employees.  One incident in 2008 involved Taylor's former assistant and one

incident in or about 2006 involved an X-ray technician and assembler.

29.    Both employees were injured while handling live but unmarked and improperly

stored and/or transported ordnance devices.

30.     Taylor specifically informed Defendant Mattia of these and other regulatory violations occurring at the company, and repeatedly urged him to take steps to bring AMC into compliance with federal and state law.

31.     Mattia ignored and rebuffed Taylor's requests for the resources necessary to bring AMC into compliance with federal and state law.  Mattia often became angry when Taylor recommended that AMC expend the money, time and effort necessary to comply with federal and state safety laws to protect its workers and the public.

32.     As a result of Mattia's opposition and inaction, Taylor could not obtain approval for the costs associated with taking necessary compliance measures to conform with state and federal law, including but not limited to:

     a)    Ensuring that explosives shipped between plants were properly packaged, marked and approved, as required by state and federal regulations;

     b)    Installing new or upgraded ventilation systems; and

     c)    Constructing storage vessels and buildings for certain explosive materials so that AMC would no longer illegally store such material, which posed a material threat of harm to AMC workers and the community.

33.     Defendants continued to knowingly manufacture, ship and store explosive materials in violation of federal and state law, despite Taylor's repeated attempts to facilitate AMC's compliance with the applicable laws.

34.     While all of the violations put AMC employees at risk of severe or fatal injury, the violations of state and federal transportation laws also put the general public at risk of severe or fatal injury if the improperly transported explosives had detonated on public roadways due to an accident or other cause.

## Taylor Speaks with Federal Investigators
### About AMC's Practices

35.    On April 30, 2012, Special Agents Jill Dempsey from the DOT Criminal

Investigations and Michael Shumaker from the EPA Criminal Investigation Division (together

"federal investigators") visited Taylor's home.

36.    Dempsey and Shumaker told Taylor that their visit was in connection with an

investigation of safety and security at AMC sparked by an audit of AMC's Atglen facility, which

had been conducted by the EPA and the Pennsylvania Department of Environmental Protection

in the previous year.

37.    Taylor answered the federal investigators' questions for approximately two hours

and cooperated with their investigation on that day and in subsequent months.

38.    In response to the federal investigators' questions, Taylor reported that AMC had

failed to obtain legally required approval for certain ordnances being shipped on public roads,

and that Taylor had informed Mattia of the need to obtain such approvals.

39.    Taylor also informed the federal investigators that AMC stored explosive

materials in violation of state and federal law.

40.    Later that day, on April 30, 2012, Taylor reported the visit by the federal

investigators to Mattia, as well as to Randy Aukamp, the Plant Manager of the Atglen facility,

and AMC's outside environmental counsel.

## AMC's Retaliatory Actions Against Taylor

41.    On May 1, 2012, the day after the events described in ¶¶ 35-40, above, AMC held

a teleconference in which Taylor, Mattia, and others were present.

42.    During the teleconference, Mattia angrily reprimanded Taylor for speaking with

the federal investigators and cooperating with the federal investigation.

43.    During the teleconference, Mattia told Taylor that Taylor should not have let the federal investigators into his house and should not have told them anything about AMC.

44.    Mattia then instructed Taylor and the other teleconference participants that they should not discuss anything further with the federal investigators.

45.    Directly following Taylor's cooperation with the federal investigators and the May 1, 2012, teleconference, Taylor was subject to hostile and unfair treatment by Mattia, acting on behalf of himself and AMC.

46.    During his employment with AMC, Taylor consistently opposed and refused to engage in criminal conduct requested by Defendants, including the unlawful transport of explosives on public roadways in violation of state and federal law.

47.    Taylor refused to engage in or approve such unlawful transportation of explosives because it violated state and federal law, and gravely threatened the safety of the people using the public roadways shared by AMC commercial vehicles.

48.    Within two weeks of the federal investigators' visit to Taylor's home, AMC placed Taylor on "administrative leave" with pay and benefits.

49.    Upon placing Taylor on administrative leave, AMC stated that it was reviewing Taylor's job performance and that Taylor was being placed on leave in order to facilitate that review.

50.    Taylor had no negative performance reviews in twelve years of employment at AMC prior to May 2012.

51.    From May 2012 through December 2012, AMC and Mattia did not communicate with Taylor in any way.

52.    From May 2012 through December 2012, AMC and Mattia never questioned Taylor about any aspect of his performance, or the legal violations he had reported.

53.    Defendants did not take any actions during Taylor's administrative leave from May 2012 through December 2012 to suggest that a legitimate review of his performance was warranted, or was actually occurring.

54.    Upon information and belief, no other employee was subject to an administrative leave and review during Taylor's twelve years of employment at AMC.

55.    From May 2012 to December 2012, the federal investigation continued, as did Taylor's cooperation with the investigation.

56.    On or about December 11, 2012, Taylor testified before a federal grand jury regarding his knowledge of AMC's knowing and willful legal violations related to the manufacture, storage, and shipment of explosive materials.

57.    On December 19, 2012, just days after testifying before the federal grand jury, Taylor received notice from AMC that his "employment with Action Manufacturing Company will be terminated effective December 20, 2012."

58.    AMC informed Taylor of the termination of his employment by voicemail and letter, but AMC did not state a reason for terminating his employment.

59.    AMC subsequently contested Taylor's application for unemployment compensation benefits, claiming it terminated Taylor for "performance" issues.

60.    The Commonwealth of Pennsylvania awarded unemployment compensation benefits to Taylor, rejecting as unsubstantiated AMC's contention that Taylor was terminated for performance issues.

61.    Defendants terminated Taylor's employment in retaliation for him communicating and cooperating with federal investigators regarding the above-mentioned legal violations and testifying before a federal grand jury regarding his knowledge of Defendants' violations.

## COUNT I
## WRONGFUL DISCHARGE -- RETALIATION IN VIOLATION OF THE SURFACE TRANSPORTATION ASSISTANCE ACT

62.    Taylor incorporates the foregoing paragraphs as though fully set forth herein.

63.    Taylor engaged in protected activity under the STAA when he communicated with federal investigators regarding AMC's shipment of explosive materials, when he cooperated with federal investigators, and when he participated in a federal grand jury investigation related to AMC's shipment of explosive materials and Mattia's role in that. *See, e.g.*, 49 U.S.C. § 31105.

64.    Defendants were aware that Taylor engaged in protected activity.

65.    Defendants terminated Taylor in retaliation for engaging in protected activity.

66.    As a direct and proximate result of Defendants' actions, Taylor has suffered and likely will continue to suffer grievous harm including, without limitation, substantial loss of wages and benefits, loss of earning potential, damage to his good reputation, emotional distress, loss of enjoyment of life, and other economic losses.

## COUNT II
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY UNDER PENNSYLVANIA LAW

67.    Taylor incorporates the foregoing paragraphs as though fully set forth herein.

68.    Defendants' threats, suspension and termination of Taylor in retaliation for him cooperating with federal investigators, participating in a federal grand jury investigation of AMC, and refusing to engage in criminal violations of state and federal law, violated clear mandates of Pennsylvania public policy, including, but not limited to, the Commonwealth's interest in the safety of its employees in the workplace and the public with respect to the

identification and labeling of hazardous substances under the Pennsylvania Worker Community

Right-to-Know Act, 35 P.S. § 7301, et. seq., ("PWCRA"), which is to be read in conjunction

with federal law and prohibits retaliation against any employee who has exercised any right

under the statute or "has testified or is about to testify in any proceeding." *Id.* at § 7319; § 7313;

see also Wetherhold v. Radioshack Corp., 339 F. Supp. 2d 670 (E.D. Pa. 2004) (holding that

plaintiff had stated a claim for wrongful discharge in violation of Pennsylvania public policy

pursuant to the PWCRA when plaintiff was terminated shortly after reporting unsafe conditions

to OSHA); Lambert v. Environmental Restoration Group, Inc., No. 07-1573, 2008 WL 723328 at

*3 (W.D. Pa. Mar. 14, 2008) (holding that plaintiff had stated a claim for wrongful discharge in

violation of Pennsylvania public policy pursuant to the PWCRA and noting that "protections are

greatest for employees who have specific expertise and training in health and safety"); Reyes v.

Termac Corp., No. 11-5124, 2012 WL 3517372 at *5 (E.D. Pa. Aug. 15, 2012) (denying

defendant's motion for summary judgment on plaintiff's claim for wrongful discharge in

violation of Pennsylvania public policy because pursuant to the PWRCA "employers within the

Commonwealth and chemical suppliers doing business within the Commonwealth have a duty . .

. to make information available as to the known or suspected health hazards posed by the use of

or exposure to hazardous substances")).

69.    Defendants' termination of Taylor in retaliation for cooperating with investigators

from the United States Department of Transportation violated clear mandates of Pennsylvania

public policy, including, but not limited to, the Commonwealth's interest in the safety of its

citizens on public highways. See Oliveri v. U.S. Food Serv., No. 09-921, 2010 WL 521126 at *4

(M.D. Pa. Feb. 9, 2010) ("Pennsylvania courts have recognized that highway safety and the

regulation of commercial motor vehicles are significant matters of public policy.") (citing

Commonwealth v. Pollock, 606 A.2d 503 (Pa. Super. Ct. 1992)); see also See 25 PA. CODE §
211.115 (incorporating 27 C.F.R. Part 555, Subpart K relating to the storage of explosive
materials); 25 PA. CODE § 211.141 (requirements for the transportation of explosives); 67 PA.
CODE § 403 (incorporating federal regulations as to the transport of hazardous materials); and 75
PA. CODE § 8303-8306 (incorporating federal regulations pertaining to the transportation of
hazardous materials, and making it a crime to willfully violate any provisions, rules or
regulations of the law).

70.    Defendants' threats, suspension and termination of Taylor in retaliation for him
cooperating with federal investigators and participating in a federal grand jury investigation of
AMC violated clear mandates of Pennsylvania public policy, including, but not limited to, the
Commonwealth's interest in the administration of justice.  See, e.g., 18 Pa. C.S.A. § 1952(a)
(prohibition on the intimidation of witnesses); Dugan v. Bell Tel. of Pennsylvania, 876 F. Supp.
713, 725 (W.D. Pa. 1994) (holding that plaintiff stated a claim for wrongful discharge in
violation of Pennsylvania public policy because he alleged that "he was fired for his failure to
participate in illegal activity").

71.    As a direct and proximate result of Defendants' actions, Taylor has suffered and
likely will continue to suffer grievous harm including, without limitation, substantial loss of
wages and benefits, loss of earning potential, damage to his good reputation, emotional distress,
loss of enjoyment of life, and other economic losses.

## JURY TRIAL DEMANDED

Taylor demands a jury trial for each of its claims set forth herein.

## DEMAND FOR RELIEF

WHEREFORE, Taylor respectfully requests that this Court enter judgment against

Defendants:

a) Reinstating Taylor to his position of Environmental Compliance Manager at AMC, or the award of back pay and front pay in lieu thereof;

b) Awarding all compensatory damages, including front pay and benefits, back pay, lost benefits, and damages for emotional distress, loss of enjoyment of life, harm to his reputation, loss of earning capacity, and such other relief as necessary to make him whole;

c) Awarding punitive damages;

d) Awarding Plaintiff the costs of this action, together with reasonable attorneys' fees;

e) Granting such other and further relief as the Court deems appropriate.

FLASTER/GREENBERG P.C.

Dated: October 15, 2013          By: _____

Michael D. Homans
Pa. I.D. No.: 76624
Emily K. Breslin
Pa. I.D. No.: 309226
1600 John F. Kennedy Blvd., 2nd Floor
Philadelphia, PA 19103
Phone: 215-279-9379
Fax: 215-279-9394
michael.homans@flastergreenberg.com
*Attorneys for Plaintiff Anthony Taylor*